E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEREMY K. BEECHER (Cal. Bar No. 301272)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5429
     Facsimile: (213) 894-0141
     E-mail:    jeremy.beecher@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:22-CR-00347-MCS |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | |
| JULIE ANN RAINBIRD, | Hearing Date: August 21, 2023<br>Hearing Time: 3:00 p.m.<br>Location:     Courtroom of the |
| Defendants. | Hon. Mark C. Scarsi |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jeremy K. Beecher, hereby files its sentencing position regarding defendant JULIE ANN RAINBIRD.

///

///

///

///

///

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence or argument that the Court may permit.

Dated: August 7, 2023   Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

   /s/
JEREMY K. BEECHER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant used victims' identities and bank accounts to purchase numerous expensive items for herself including a car and three motorcycles.  Defendant's fraud surely would have continued but for her arrest.  When detained after a lengthy and dangerous police pursuit, she possessed thousands of purloined checks, credit and debit cards, bank account numbers and other identifying information belonging to dozens of other victims.  Defendant's past identity theft convictions show her conduct here was no fluke.  For this, the government respectfully requests that the Court sentence defendant to: (1) a mid-range sentence of 51 months' imprisonment; (2) a three-year period of supervised release; (3) $36,393.26 in restitution; (4) no fine; and (5) the mandatory $200 special assessment.  Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

**II.   PROBATION'S RECOMMENDATION**

On May 22, 2023, defendant pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344(2) (Count 6) and one count of possession of fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) (Count 13), pursuant to a plea agreement filed with the court on May 11, 2023.  (Dkt. 32 ("Plea Agreement").)  The United States Probation & Pretrial Services Office ("USPO") issued its Presentence Investigation Report ("PSR") on July 10, 2023.  (Dtk. 35.)

The USPO calculated defendant's USSG Total Guidelines Offense Level at 16, with which the government agrees (see PSR ¶¶ 29-52):

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss of More Than $40,000 | +6 | U.S.S.G. § 2B1.1(b)(1)(D) |
| Ten or More Victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| Use of Means of Identification | +2 | U.S.S.G. § 2B1.1(b)(11)(C)(i) |
| Reckless Endangerment During Flight | +2 | U.S.S.G. § 3C1.2 |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a)-(b) |

The USPO also calculated that defendant has 13 criminal history points, and therefore falls within Criminal History Category VI. (PSR ¶¶ 54-67.)

With a Total Guidelines Offense Level of 16 and a Criminal History Category of VI, the USPO found that the Guidelines range for defendant's term of imprisonment was 46 to 57 months; that the maximum statutory term of imprisonment for the counts of conviction is forty years; that $36,393.26 in restitution is owed; that any fine amount should be waived since defendant is not likely to be become able to pay any fine; and that the Guidelines term of supervised release is 2-5 years as to the bank fraud count and 1-3 years as to the use of unauthorized access devices count. (PSR ¶¶ 140-160.) The government agrees with these calculations and findings.

The government agrees with USPO's calculations of defendant's total Guidelines offense level, criminal history, and payment obligations. For the reasons set forth below, the government requests that the Court impose a mid-range Guidelines term of 51 months' imprisonment; a three-year term of supervised release; $36,393.26 in restitution; no fine; and the mandatory $200 special assessment.

4

## III. STATEMENT OF FACTS

### A. Offense Conduct

On May 21, 2019, defendant led state authorities on a lengthy and well publicized[1] pursuit in which she drove a motorhome around the Los Angeles basin, crashed into numerous cars, causing severe bodily injury to at least one driver, committed several hit-and-runs, and injured two dogs.

After the pursuit ended, law enforcement discovered evidence of significant fraud inside the motorhome:  181 checks from 72 victims that were not yet cashed; a check stock printer; 92 credit and debit cards from 48 victims; and, in an Excel spreadsheet on a computer, 86 credit and debit card numbers, 1,273 bank account numbers, and 1,727 social security numbers.  Defendant admits that she possessed these items for the purpose of fraudulently accessing victims' funds using their stolen identifying information.

Further investigation revealed that in July and August 2018, defendant used forged checks to make the following purchases using funds from deceased victim W.O.'s account:

- On July 27, 2018, in Los Angeles County, defendant used a forged check in the amount of $4,000, to purchase a Ford Flex automobile at Road Runner Auto Group Inc. in Canoga Park.

- On August 7, 2018, in Los Angeles County, defendant used a forged check in the amount of $5,950.12, to purchase a 2013 Kawasaki EX650 motorcycle from Ken & Joe's Honda-Kawasaki-KTM in Santa Clarita.

- On August 8, 2018, in Los Angeles, County, defendant used a forged check in the amount of $924.93, to purchase

---

[1] *See, e.g.,* https://www.nbclosangeles.com/news/local/socal-police-chases/rv-chase-woman-charged-felonies-crash-dogs-hurt/135606/

5

     motorcycle attire from Ken & Joe's Honda-Kawasaki-KTM in Santa Clarita.

- On August 9, 2018, in Los Angeles County, defendant used a forged check in the amount of $1,466.36, to purchase motorcycle gear, parts and accessories from Ken & Joe's Honda-Kawasaki-KTM in Santa Clarita.

- On August 15, 2018, in Los Angeles County, defendant used a forged check in the amount of $628.15, to purchase motorcycle gear, parts and accessories from Ken & Joe's Honda-Kawasaki-KTM in Santa Clarita.

Further, on November 15, 2018, defendant opened an Eaglemark Savings Bank credit account using victim A.S.'s name, date of birth, social security number, driver's license and home address, to finance a Harley Davidson motorcycle purchase in the amount of $11,959.57 from Harley Davidson of Glendale.  And on April 10, 2019, defendant passed a forged check drawing on victim C.S.'s First National Bank account for $1,350 toward a 2015 Kawasaki EX650 motorcycle from Simi Valley Cycles in Simi Valley.

Defendant admits her conduct caused actual losses to victims in the amount of $31,840.76.  (The restitution amount of $36,393.26 includes additional losses incurred by victims as a direct result of defendant's fraud.)  Defendant also admits she intended to defraud victims of no less than $43,434 using the checks and access devices that she possessed at the time of her arrest.

(PSR ¶¶ 13-21; Plea Agreement ¶ 13.)

### IV.  ARGUMENT

The Court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).  The Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  In addition, the Court

should fashion a sentence that reflects the seriousness of the offense, promotes respect for the rule of law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from future crimes of the defendant, among other considerations. 18 U.S.C. § 3553(a)(2).

The government recommends that the defendant be sentenced to: (1) a mid-range sentence of 51 months' imprisonment; (2) a three-year period of supervised release; (3) $36,393.26 in restitution; (4) no fine; and (5) the mandatory $200 special assessment. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

The Court must consider the nature, circumstances, and seriousness of the offense in fashioning an appropriate sentence. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). Here, the government's proposed mid-range sentence of 51 months reflects the seriousness of defendant's crimes, which were long-running and involved hundreds of victims.

The Government's recommendation also accounts for defendant's unique characteristics. Defendant has a lengthy criminal history, including past convictions involving strikingly similar conduct to that at issue here. In a 2014 Ventura County case, defendant pleaded guilty to misdemeanor identity theft after using victim J.M.'s personal identifying information to obtain credit, goods, services and medical information without J.M.'s consent. (PSR ¶ 62.) And in a 2014 Los Angeles County case, defendant pleaded guilty to felony forgery and grand theft after stealing 32 victims' identifying information. Upon execution of a search warrant, defendant possessed

driver's licenses, identification and Medicare cards, checks, blank checks, an electronic card reading device, and paperwork with advice on how to create fake identification. (PSR ¶ 63.) The conduct underlying defendant's 2014 convictions is nearly unchanged to the conduct here and shows that for defendant, fraudulently drawing on victims' funds and identities is not a one-time mistake but, unfortunately, a long-standing pattern of behavior which she chose to continue even after her 2014 convictions.

In addition to causing financial harm to a slew of victims across many years, defendant's conduct is aggravated by the fact that she physically endangered the public when fleeing arrest here, causing serious bodily harm to at least one victim, committing several hit-and-runs, and injuring two dogs. (PSR ¶¶ 47, 64.)

In mitigation, however, it appears defendant's conduct stemmed at least in part from a serious substance abuse problem, which itself may stem from the childhood and adult trauma detailed in the PSR.

Accordingly, a mid-range sentence of 51 months appropriately accounts for both the seriousness of the offense and defendant's history and characteristics.

**B. Need for Deterrence and to Promote Respect for the Law**

A mid-range, 51-month sentence is also warranted to promote deterrence against identity theft fraud, which is a serious breach of the public trust.

"Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (citation omitted). A significant custodial sentence is necessary to

8

deter defendant and others who would engage in similar conduct, protect the public, and to underscore the government's commitment to fighting identity theft and fraud. Defendant's actions in this case, which occurred after multiple convictions for similar conduct, demonstrate the need for such deterrence. A substantial custodial term is necessary to deter defendant from again returning to the same criminal behavior. 18 U.S.C. §§ 3553(a)(2)(A)-(C). Additionally, the government's recommended sentence would promote respect for the laws governing identity theft.

### C. Need to Avoid Unwarranted Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants. One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."). The government's mid-range recommended sentence falls squarely within the sentencing guidelines and thus avoids an unwarranted disparity with similarly situated defendants.

### D. Defendant Should Serve Three Years of Supervised Release,

A mid-range, three-year term of supervised release is appropriate given defendant's extensive and escalating criminal history, as well as her long-standing substance abuse issues. See USSG § 5D1.1, comment. (n.3(A),(B)) (noting factors to be considered

in determining whether to impose a term of supervised release and stating that "[t]he court should give particular consideration to the defendant's criminal history (which is one aspect of the 'history and characteristics of the defendant'")." Defendant has repeatedly demonstrated difficulty following the law, both as to identity theft and using controlled substances, and has demonstrated a pattern of resorting to fraud to accomplish her ends. A mid-range term of supervised release is appropriate to effectively protect the public from defendant's future crimes and ensure that she continues to abide by the law following release, including by ensuring that defendant does not again resort to using controlled substances.

**E. Defendant Should Pay $36,393.26 in Restitution and No Fine**

In the plea agreement, defendant agreed to make full restitution. (Plea Agreement ¶ 9.) The PSR correctly calculates restitution as $36,393.26. (PSR ¶ 158.) This figure is based on investigation by law enforcement which revealed the total extent of losses caused to victims by defendant's fraudulent conduct.

The government agrees with the USPO that defendant is unable to pay a fine and is not likely to become able to do so. (PSR ¶¶ 135-137.) The government does not request that any fine be imposed.

**V. CONCLUSION**

For the foregoing reasons, the government recommends that the defendant be sentenced to: (1) a mid-range sentence of 51 months' imprisonment; (2) a three-year period of supervised release; (3) $36,393.26 in restitution; (4) no fine; and (5) the mandatory $200 special assessment. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).